UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEARAME B.,[1]                                     Case No. 1:21-cv-228

       Plaintiff,                             Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Jearame B. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error. For the reasons explained below, the non-disability decision is REVERSED and remanded for further review.

**I. Summary of Administrative Record**

On January 16, 2017, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on December 31, 2012[3] due to OCD, bipolar, anxiety disorder and club foot. (Tr. 272). After his applications were denied initially and on reconsideration, Plaintiff requested an evidentiary hearing. On April 29, 2019, Plaintiff appeared with counsel and testified by videoconference before Administrative Law Judge

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).
[3] If awarded, SSI is payable only as of the month the application is filed. 20 C.F.R. § 416.335. Therefore, the relevant disability period began on January 15, 2017.

1

("ALJ") William Diggs. A vocational expert also testified. (Tr. 38-76). On June 10, 2019, the ALJ issued an adverse decision. (Tr. 17-29).

Plaintiff was 43 years old on the date he filed his application, and remained in the "younger individual" age category at the time of the ALJ's decision. (Tr. 27). He has the equivalent of a high school education. (*Id*.) He previously worked as a flooring/carpet installer at the heavy exertional level, but has not worked at the substantial gainful activity level since the date of his application. (*Id*.; *see also* Tr. 19). At the time of the hearing, Plaintiff was living by himself in an apartment that he obtained with vouchers. Prior to that, he lived in homeless shelters and in a group sober living facility. Plaintiff reportedly has been sober for more than 2 years. (Tr. 23).

The ALJ determined that Plaintiff had the following severe impairments: "dysfunction of a major joint, osteoarthrosis, depressive disorder, anxiety disorder, and substance addiction in remission." (Tr. 19). In addition, the ALJ found non-severe impairments of hepatitis C and tobacco use. (Tr. 20). Considering all impairments, the ALJ determined that none met or medically equaled the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

After considering the record, the ALJ determined that, while Plaintiff can no longer perform his past work, he retains the residual functional capacity ("RFC") to perform some sedentary work. In further defining Plaintiff's physical and mental limitations, the ALJ found:

> [H]e is able to lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 4-hours in an 8-hour workday and sit for 6-hours in an 8-hour workday. The claimant can operate foot controls occasionally and frequently operate hand controls, bilaterally. He can handle, finger, and feel on a frequent basis with his right upper extremity. The claimant can occasionally climb ramps and/or stairs. He can frequently stoop, kneel, and

>crawl, but never crouch or climb ladders, ropes, or scaffolds. The claimant can occasionally balance but must avoid slippery and uneven surfaces. The work, which he can do, is limited to occupations, which involve the performance of simple, routine, tasks; in an environment with no fast paced strict production demands. He can have occasional contact with supervisors and coworkers, but no contact with the public. The claimant can tolerate occasional changes in work setting; if explained in advance. He must avoid all exposure to work hazards, such as dangerous machinery and unprotected heights.

(Tr. 22).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ concluded that Plaintiff could still perform a "significant number" of other jobs in the national economy, including representative jobs of document preparer, inspector, and assembler. (Tr. 28). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this judicial appeal, Plaintiff challenges the ALJ's assessment of the medical opinion evidence pertaining to his mental limitations. The Court agrees that the ALJ committed reversible error in his evaluation of medical opinions, including those of Plaintiff's treating psychiatrist.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also, generally*, *Biestek v. Berryhill*, 139 S. Ct. 1148,1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §§ 404.1512(a); 416.912(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  *See* 42 U.S.C. § 423(d)(1)(A).

### B.  The ALJ's Analysis of Mental RFC Opinion Evidence

Plaintiff's sole claim of error challenges the ALJ's analysis of the medical opinion evidence pertaining to his mental limitations.  The mental health opinion evidence consists of: (1) the March 2017 opinions of Plaintiff's treating psychiatrist; (2) a June 2017 consultative examination report by an agency psychologist; and (3) two identical mental RFC opinions of agency reviewing psychologists on initial review and on reconsideration.

#### 1.  The Applicable Regulations and the Treating Physician Rule

The regulatory scheme in effect at the time Plaintiff filed his application set forth a hierarchy of presumptions regarding the weight to be given to differing medical source opinions.  Under those regulations, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have

5

an ongoing treatment relationship (a "nontreating source")." *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

Plaintiff argues that the ALJ erred when he failed to comply with the long-standing treating physician rule,[4] which requires the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). In contrast to that rule, the ALJ reversed the presumptive hierarchy and gave the most weight to the non-examining reviewing consultants, and the least weight to Plaintiff's treating psychiatrist. That fact in itself would not be grounds for reversal because the presumptive hierarchical order of opinion evidence is subject to rebuttal. Thus, "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). On the other hand, an ALJ's decision to give the most weight to non-examining consultants will be upheld only if the ALJ complied with regulatory requirements and if the decision is supported by substantial evidence.

The regulation that defines the treating physician rule states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.927(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. If the ALJ determines that a treating

---

[4]Revisions to the regulations eliminate the treating physician rule, but do not apply to applications filed prior to March 27, 2017.

6

physician's opinion is not entitled to controlling weight, the ALJ is required to articulate "good reasons" for that decision. *Id.* Under the "good reasons" standard, an ALJ cannot reject a treating physician's opinion solely based on the conflicting opinions of non-examining consultants. Nor may an ALJ subject a treating physician's opinions to greater scrutiny than the opinions of consulting physicians. *See Gayheart v. Com'r of Soc. Sec.*, 710 F.3d at 377. Additionally, in cases when an ALJ does not give controlling weight to the opinion of a treating physician, the ALJ must explain the weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c).

As a rule, an ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (holding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ existed to support the decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Com'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999) (Table); *see also Hurst v. Sec'y of HHS*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

### 2. The ALJ's Analysis of the Medical Opinions in this Case

On March 3, 2017, Plaintiff's treating psychiatrist, Dr. Quinton Moss, completed a Mental Capacity Assessment form. Dr. Moss identified numerous "marked" and "extreme" functional limitations that arguably would be work-preclusive. (Tr. 522-524). Although the form was mostly a "check-the-box" form, Dr. Moss added the following brief narrative response to explain the clinical findings that supported his opinions: "He has continued struggles with adapting, coping, even when sober for years at a time." (Tr. 524). Additionally, while stating that Plaintiff had the ability to control his drug and alcohol use with "ongoing treatment," he opined that Plaintiff would not be capable of managing benefits due to his impulsivity, poor functioning, and risk that he would "grossly mismanage" any funds awarded. (*Id.*)

In addition to Dr. Moss's opinions, the record contains three opinions by agency psychologists. Three months after Dr. Moss completed his assessment, Nancy Schmidtgoessling, PhD, examined Plaintiff and provided a consultative report. (Tr. 694-704). A month later in July 2017, reviewing (non-examining) psychologist, Vicki Warren, PhD., provided RFC opinions on initial consideration. And in August 2017, another reviewing psychologist, Tonnie Hoyle, PsyD, provided identical RFC opinions to those expressed by Dr. Warren. In evaluating the four opinions, the ALJ gave the most weight to the opinions of Drs. Warren and Hoyle while giving only "limited weight" to the opinions of both Dr. Moss and the examining consultant, Dr. Schmidtgoessling.

The ALJ's analysis did not comport with critical regulatory requirements regarding the evaluation of medical opinion evidence. The ALJ offered no discussion of the non-examining consulting opinions on which he chiefly relied, and no explanation for the weight given to those opinions. In addition, despite ostensibly affording those consulting

8

opinions "considerable weight," the ALJ deviated significantly from their mental RFC opinions, assessing mental limitations that were not endorsed by either Dr. Warren or Dr. Hoyle.[5] Although Plaintiff does not directly challenge that less-than-ideal analysis, the consulting opinions remain highly relevant because the Defendant urges this Court to consider them as substantial evidence on which the ALJ based his decision.

Turning to Plaintiff's primary claim, the ALJ offered the following brief explanation of the weight given to the opinions of Plaintiff's treating psychiatrist:

> On March 3, 2017, Quinton E. Moss, M.D., completed a checklist mental capacity assessment reporting that the claimant was markedly to extremely limited in all areas of functioning, other than adaptation and hygiene. While this opinion suggests off-task behavior, it is accorded limited weight, as it appears Dr. Moss's [sic] based it upon the claimant's allegations. Moreover, the undersigned notes that the claimant had not yet been discharged from substance abuse treatment.

(Tr. 25).

The ALJ's analysis falls short of what the regulations require. The ALJ did not explicitly acknowledge Dr. Moss's treating physician status or identify the precise basis on which he was declining to give his opinions "controlling weight" before moving on to the alternate analysis of why he was giving the opinions only "limited weight." While the undersigned does not read the regulatory language as mandating precise two-step articulation in *every* case, some courts have found that an ALJ's failure to first articulate why an treating source opinion is not entitled to "controlling weight" before moving on to

---

[5]Both agency reviewing psychologists opined that Plaintiff is limited to "infrequent, superficial interactions with coworkers and supervisors in a non-public setting," and can adapt to "infrequent changes in the work setting." (Tr. 93, 115). However, the ALJ instead determined he could engage in "occasional contact with supervisors and coworkers," generally defined as up to 30% of the workday, with "occasional changes in work setting; if explained in advance." Many cases have held that "infrequent, supervision interaction[]" is not equivalent to "occasional interaction." *See e.g., Runyon v. Com'r of Soc. Sec.*, 2021 WL 3087639, at *5 (S.D. Ohio, July 22, 2021), *adopted at* 2021 WL 3489615 (S.D. Ohio Aug 09, 2021) (reversing based on distinction between "occasional" and "superficial" interactions).

the "good reasons" analysis in and of itself requires remand. *See, e.g., Lutz v. Com'r of Soc. Sec.*, No. 3:16-CV-210, 2017 WL 3140878, at *3 (S.D. Ohio July 25, 2017), *adopted at* 2017 WL 3432725 (S.D. Ohio Aug. 9, 2017) (holding that the failure to first articulate why a treating physician's opinions are not entitled to controlling weight prior to separate articulation of the "good reasons" analysis constitutes reversible error, citing *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d at 377-78).

More importantly, the ALJ was legally required to give Dr. Moss's opinions controlling weight unless he found them to be not "well-supported" and/or "inconsistent with" other substantial evidence of record. On the record presented, the ALJ implies that the opinions were not "well-supported by medically acceptable clinical …diagnostic techniques" because he dismisses them as "based [] upon the claimant's allegations." But the suggestion that a trained mental health clinician's opinions can be rejected merely because they are based upon clinical observations (including the analysis of subjectively reported symptoms) has been rejected by the Sixth Circuit.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen,* 817 F.2d 865, 873-74 (D.C. Cir. 1987) (additional quotation omitted)). In *Blankenship*, the court held that the ALJ erred in rejecting functional limitations based solely upon a clinical interview, without additional testing. *See also Keeton v. Com'r of Soc. Sec.*, 583 Fed. Appx. 515, 526 (6th Cir. Oct. 14, 2014) (an ALJ's rejection of a psychiatrist's opinion solely because it is based on self-reporting by the claimant would likely be inappropriate); *Price v. Com'r of Soc. Sec.*, 2015 WL 93644 at **4-5 (S.D. Ohio June 7, 2015) (reversing

because ALJ failed to discuss controlling weight standard and instead rejected opinion based upon speculation that the treating physician sympathetically accepted subjective complaints), *adopted at* 2015 WL 1402587 (S.D. Ohio March 25, 2015).

The only other articulated basis for the ALJ giving "limited weight" to Dr. Moss's opinions was the fact that Plaintiff had not yet been discharged from substance abuse treatment. However, Dr. Moss's most recent exam prior to rendering his opinion was after Plaintiff had exhibited 85 days of sobriety in an in-patient program. Dr. Moss's opinions were based upon Plaintiff's then-current condition (sobriety), and Dr. Moss expressly states that Plaintiff continues to have significant mental RFC limitations even over long periods of sobriety. Ultimately, Plaintiff was discharged just two weeks later. Thus, the ALJ's reference to the fact that Plaintiff had not fully completed treatment does not suffice as "good reasons."

Notably absent from the ALJ's analysis is any discussion of the treatment records by Dr. Moss or others who treated Plaintiff at the same facility. Multiple treatment team records exist from that period of time in addition to the three clinical examination records authored by Dr. Moss. And, leaving aside the ALJ's failure to discuss whether Dr. Ross's opinions were supported by his treatment records, the ALJ also did not indicate whether he considered any other relevant factors. *See generally*, 20 C.F.R. § 416.927(c).

In opposition to remand, the Commissioner heavily leans into the fact that the opinions by Dr. Moss were expressed on a checkbox form with minimal narrative explanation. But that fact does not excuse away the mandatory procedural requirement to determine whether the opinion of a treating physician is entitled to controlling weight, or the "good reasons" articulation requirement. Rather, Dr. Moss's use of a check-box

11

form is but one factor in the Court's determination of whether the ALJ's procedural errors warrant remand or should be excused as harmless.

> [W]here the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. See *Wilson,* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Wilson,* 378 F.3d at 547. However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley*, 581 F.3d at 409.

Arguing that this Court should affirm, the Commissioner asks the Court to consider possible reasons that the ALJ did not articulate but *might* have considered to determine that Dr. Moss's opinions deserve only "limited weight."  For example, the Commissioner suggests that Dr. Moss's treatment notes did not actually support his opinions.  However, Plaintiff cites to some of the very same treatment notes to support Dr. Moss's opinions.  It is the ALJ's role and not the role of this Court to weigh the evidence.  Where the ALJ fails to provide an "accurate and logical bridge" that would explain his interpretation of the evidence and conclusions, this Court is left with no ability to engage in meaningful review, and will not engage in speculation.

For the same reasons, the Court rejects the Defendant's hypothesis that the ALJ *might* have declined to give controlling weight to Dr. Moss's opinions after determining that they were inconsistent with other substantial evidence in the record.  Defendant's suggestion is undercut by the fact that the ALJ himself offered no comparative analysis between the record as a whole and Dr. Moss's opinions. See *Gayheart*, 710 F.3d at 377 (finding error where the ALJ's analysis failed to explain which aspect of the controlling weight test he relied upon, and did not identify the substantial evidence that was

purportedly inconsistent with psychiatrist's opinions). And in contrast to Defendant's view, Plaintiff insists that Dr. Moss's opinions were consistent with substantial evidence in the record, including the opinions of the examining consulting psychologist.

In response, the Defendant argues in part that the ALJ properly gave "[l]imited weight…to Dr. Schmidtgoessling's opinion as it appears based upon the claimant's subjective allegations." (Tr. 27). As discussed, however, the rejection of a trained psychologist's opinion based solely upon the use of clinical interview techniques appears contrary to controlling Sixth Circuit law. The Defendant also cites to the mental RFC opinions of the reviewing psychologists on whom the ALJ relied. However, apart from the ALJ's problematic analysis of their opinions, "the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors." *Gayheart*, 710 F.3d at 377.

In short, the ALJ committed reversible error when he violated the treating physician rule and failed to provide good reasons for the weight given to Dr. Moss's opinions. The errors deprive this Court of meaningful review. Because the errors were not harmless, remand is required.

### III. Conclusion and Order

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the

regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four for further proceedings consistent with this opinion.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
